UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NANCY ESTES and KEVIN ESTES,

                Plaintiffs,

  -against-                                    1:10-CV-0226
                                                            (NAM/DRH)
TEJINDER SINGH, M.D., ALBANY MEDICAL
CENTER HOSPITAL and ALBANY MEDICAL
COLLEGE,

                Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

Donovan & O'Connor                       Michael R. Hinkley, Esq.
1330 Mass MoCA Way                      Chris S. Dodig, Esq.
North Adams, Massachusetts 01247
*Attorneys for Plaintiffs*

Maynard, O'Connor Smith                Lia B. Mitchell, Esq.
& Catalinotto, L.L.P.
6 Tower Place
Albany, New York 12203
*Attorneys for Defendants*

**Norman A. Mordue, Chief U.S. District Judge**

                            MEMORANDUM-DECISION and ORDER

I.      INTRODUCTION

      In this diversity action, plaintiffs have filed a motion for summary judgment to dismiss defendants' Third Affirmative Defense asserting plaintiffs' claim for medical malpractice is barred by New York's two and a half year statute of limitations. Plaintiffs assert that the affirmative defense is belied by the facts in this case which demonstrate that plaintiff Nancy Estes is entitled to assert the continuous treatment doctrine to account for any gaps in time between treatment by the defendant Tenjinder Singh, M.D.. Defendants oppose plaintiffs' motion, have cross-moved to dismiss the complaint based on expiration of the statute of limitations and contend

that the continuous treatment doctrine is inapplicable to the facts herein. Plaintiffs oppose defendants' cross-motion.

II.     RELEVANT FACTUAL BACKGROUND

Briefly, the facts pertinent to the motions pending before the Court are these: After suffering from various gastrointestinal problems for a number of years, plaintiff Nancy Estes consulted with her physician, defendant Tejinder Singh, with whom she had treated since 1993, and underwent a laparoscopic Nissen fundoplication surgery at Albany Medical Center on March 9, 2007. Plaintiff then followed up with Dr. Singh post-operatively on March 22, May 1, May 17, and May 31, 2007. Dr. Singh's office notes concerning these post-operative visit's indicate that plaintiff continued to have complaints related to gastrointestinal issues including dysphagia and esophageal spasms. Dr. Singh recommended that plaintiff remain on a liquid diet and continue to seek treatment from her gastroenterologist.

Plaintiff testified that although she was scheduled to return to Dr. Singh's office after the May 31, 2007, appointment in 8-12 weeks for follow-up treatment, she explained to Dr. Singh that she was in dire financial straits at that time and could not afford the co-payments and make the long trip to Albany with her compromised vehicle. She testified at her deposition that Dr. Singh left her treatment options "open" so that if she needed to come back she could.

Plaintiff returned to Dr. Singh at the suggestion of an emergency room doctor on March 17, 2009, and was seen again by Dr. Singh on April 21, 2009. Dr. Singh's notes from those office visits indicate that plaintiff was suffering from ongoing epigastric complaints and was suffering from subcostal pain. Plaintiff stated she had not changed the liquid diet suggested by Dr. Singh when she saw him post-operatively in 2007. Plaintiff's medical records from her gastroenterologist indicated she had a 4mm nodule in the distal bulb and some looseness to the Nissen fundoplication. Dr. Singh noted that plaintiff had not tried any change in medical therapy

2

since she last saw him in 2007. Although Dr. Singh's notes indicate that he planned to see plaintiff back for continued therapy, plaintiff did not return to Dr. Singh after the April 21, 2009, office visit. She testified that she "wasn't getting any answers" and "wasn't getting any better" and decided to seek treatment elsewhere. Plaintiff filed the present action on February 26, 2010, almost three years after the date of the alleged malpractice.

III.    DISCUSSION

Pursuant to N.Y. C.P.L.R. § 214–a, "[a]n action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of." *See also Davis v. City of New York*, 38 N.Y.2d 257, 259 (N.Y. 1975). However, the statute has a built-in toll that delays the running of the limitations period "where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure." N.Y. C.P.L.R. §214–a. Under the continuous treatment doctrine, the 2 1/2 year period does not begin to run until the end of the course of treatment, "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint." *Nykorchuck v. Henriques*, 78 N.Y.2d 255, 258 (N.Y. 1991).

The underlying premise of the continuous treatment doctrine is that the doctor-patient relationship is marked by continuing trust and confidence and that the patient should not be put to the disadvantage of questioning the doctor's skill in the midst of treatment, since the commencement of litigation during ongoing treatment necessarily interrupts the course of treatment itself. *See Massie v. Crawford*, 78 N.Y.2d 516, 519 (N.Y. 1991). Implicitly, the doctrine also recognizes that treating physicians are in the best position to identify their own malpractice and to rectify their negligent acts or omissions. *See Allende v. New York City Health & Hosps. Corp.*, 90 N.Y.2d 333, 338 (N.Y. 1997).

3

According to one of the most recent New York appellate courts to address this issue, the continuous treatment doctrine contains three principal elements. *Gomez v. Katz*, 61 A.D.3d 103 (2d Dep't 2009).

> The first is that the plaintiff continued to seek, and in fact obtained, an actual course of treatment from the defendant physician during the relevant period. The term "course of treatment" speaks to affirmative and ongoing conduct by the physician such as surgery, therapy, or the prescription of medications. A mere continuation of a general doctor-patient relationship does not qualify as a course of treatment for purposes of the statutory toll. Similarly, continuing efforts to arrive at a diagnosis fall short of a course of treatment, as does a physician's failure to properly diagnose a condition that prevents treatment altogether.

*Id.* at 112 (internal citations omitted). A second element of the doctrine is that the course of treatment provided by the physician be for the same conditions or complaints underlying the plaintiff's medical malpractice claim. *See Nykorchuck*, 78 N.Y.2d at 259; *Borgia v. City of New York*, 12 N.Y.2d 151, 157 (N.Y. 1962).

The third element of the doctrine is that the physician's treatment be deemed "continuous." *Gomez*, 61 A.D.3d. at 165. Continuity of treatment is often found to exist "when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during the last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past." (citations omitted). The law recognizes, however, that a discharge by a physician does not preclude application of the continuous treatment toll if the patient timely initiates a return visit to complain about and seek further treatment for conditions related to the earlier treatment (see *McDermott v. Torre*, 56 N.Y.2d 399, 406 (N.Y. 1982).

In the present case, it is undisputed that the first element has been met - Dr. Singh clearly was providing the plaintiff with a course of treatment over the years that she was his patient. As to the second element, it is also clear that at least between 2007 and 2009, Dr. Singh was treating

4

plaintiff for the same or closely related condition. There is nothing in the medical records herein to indicate that an intervening medical condition was involved in the course of treatment.

Finally, concerning the third element, defendants contend that plaintiff's visits to Dr. Singh in March and April of 2009 were a resumption of treatment, rather than a continuation of treatment from 2007. Indeed, defendants argue that it is apparent that plaintiff had lost confidence in Dr. Singh since she sought treatment from other physicians and ceased treating with him after march 31, 2007. Plaintiff contends that did not lose faith in Dr. Singh. Rather, she testified that she told Dr. Singh that she could not continue to make the trip to his office from her home because her vehicle was not reliable and she could not afford the insurance co-payments. She testified that he left her treatment options "open" so she could return if necessary.[1] In the interim, plaintiff continued following all of Dr. Singh's recommendations concerning her diet and sought treatment with her gastroenterologist at Dr. Singh's specific suggestion.[2] When her pain became interminable and she was forced to seek treatment at an emergency room, the doctor there suggested that she return to Dr. Singh which she did for further treatment in March 2009.

It is apparent based on the evidence submitted herein that plaintiff did not terminate her course of treatment with Dr. Singh, despite defendants' reliance on the gap between office visits and the fact that she saw other physicians. Rather, she was following all of Dr. Singh's recommendations up to the time that she saw him again in March and April of 2009. Indeed, Dr. Singh even noted in his records of the two visits that "she has not tried any change in medical therapy since we have seen her last."

IV.   CONCLUSION

---

[1] Dr. Singh was not asked about this issue during his deposition nor has he submitted an affidavit to dispute plaintiff's recollection of this conversation.

[2] The Court notes that Dr. Singh acknowledged during his deposition that he told plaintiff to follow up with her gastroenterologist in May 2007.

5

Based on review of the entire record the Court finds that plaintiff has established her entitlement to the continuous tolling provision insofar as the statute of limitations in this case. Therefore, it is

ORDERED that plaintiff's motion for summary judgment (Dkt # 29)) dismissing defendants' Third Affirmative Defense is GRANTED; and it is further

ORDERED that defendants' cross-motion for summary judgment (Dkt # 30) with respect to the Third Affirmative Defense is DENIED; and it is further

ORDERED that this case is Deemed Trial Ready. Counsel is directed to file a status report on or before August 29, 2011, as to the estimated length of trial and any outstanding issues. A trial date will be set by Chief Judge Norman A. Mordue upon the filing of the status report.

IT IS SO ORDERED.

Date:   August 9, 2011
        Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge